**STATE of Missouri, (Plaintiff) Respondent,**

**v.**

**Ray Homer LOVELACE, (Defendant) Appellant.**

**No. 55704.**

Supreme Court of Missouri, Division No. 1.

Jan. 11, 1971.

John C. Danforth, Atty. Gen., J. Michael Jarrard, Asst. Atty. Gen., Jefferson City, for respondent.

Wyman Wickersham, Kansas City, for appellant.

HOLMAN, Judge.

Defendant was charged with the offense of robbery in the first degree. See §§ 560.-120 and 560.135.[1] The trial resulted in a verdict of guilty and the jury fixed defendant's punishment at imprisonment for a term of ten years. Defendant has appealed.

No question is raised concerning the sufficiency of the evidence and therefore a brief statement of facts will suffice. At about one o'clock a.m. on September 5, 1968, a man entered the China Doll Restaurant in Kansas City, Missouri, armed with a double-barreled sawed-off shotgun and declared, "it's a holdup." Present in the kitchen were the owner, Suzie Green, her daughter Gloria Green, and an employee, Willie Davis. The robber ordered Suzie to put the money into a sack. She obtained a sack and put $158 therein and gave it to him and he then left the restaurant. Two days later the defendant was arrested and placed in a police line-up which was viewed by the three witnesses heretofore named and each of them identified defendant as the person who had committed the robbery. Also, each of them recalled having seen defendant in the restaurant one or more times on occasions prior to the holdup. These three witnesses testified at the trial and identified defendant at that time.

Defendant took the stand and denied any guilt in connection with the charge. He testified concerning his actions during the evening preceding the robbery. He stated that he arrived at his home at about 11 p.m. and stood in front of the house and visited about thirty minutes with his brother and two friends before entering the house and going to bed. His alibi defense was supported by testimony of his father and mother, a sister, a brother, and Eddie Reese, one of the friends with whom he visited in front of his home on the night in question.

The only point briefed on this appeal is that the trial court erred in overruling defendant's motion to discharge the jury because of a statement made in the testimony of Detective Floyd Smith to the effect that defendant refused to answer questions. This is said to have violated defendant's rights as guaranteed by Art. I, § 19, Mo. Const.1945, V.A.M.S., and the Fifth Amendment to the U. S. Constitution. The statement referred to is shown in the following testimony of the witness: "After Mr. Lovelace had been arrested I was assigned to interrogate him along with Detective Sergeant Gary McCready of the Crimes Against Persons Unit. Q. Did you so interrogate him? A. We * * * removed him from the jail and brought him back down to the Crimes Against Persons Unit where he was—read the Miranda warning decision in regards to his rights; he stated that he understood it, and at that point he requested we call his attorney. * * * And he was offered a phone to do so at which time he refused to call his attorney, and refused to answer any further questions. Q. And you never interrogated him any further? A. We did not. He was returned to the jail and was never interrogated any further." Thereafter, defendant's attorney developed the matter further on cross-examination, as follows: "Q. You're here to testify about something that is supposed to aid the State's case. What do you know, anything other than what you've told us here? A. Nothing other than what I've testified to, that I advised him of his rights. That is my part of the case. Q. And he didn't make a statement? A. He refused to make any statement until he contacted his attorney." As shown in the quoted testimony no objection was made to the statement now complained of. However, after the witness was excused and the State had rested its case the following occurred: "MR. WICKERSHAM: At this time I move to discharge the jury for the reason that the—introducing into evidence testimony of the refusal to make a state-

---

1. All statutory references are to RSMo 1969, V.A.M.S.

ment, would imply an element of guilt on the part of the defendant, and that—calling special attention the fact that he exercised his constitutional rights of not making a statement. And placing undue emphasis on that. THE COURT: The motion will be denied."

■ Defendant has cited cases such as State v. Dowling, 348 Mo. 589, 154 S.W.2d 749 [5], and State v. Phelps, Mo.Sup., 384 S.W.2d 616 [7], which hold that under certain circumstances testimony such as that complained of is prejudicial error. However, it is elementary that in order to preserve error in the admission of evidence there must be an objection made to it. See State v. Fischer, 124 Mo. 460, 27 S.W. 1109 [2]; State v. Anderson, Mo.Sup., 375 S.W. 2d 116 [8], and State v. Coleman, Mo., 460 S.W.2d 719 (adopted December 14, 1970). The statement in question was volunteered and we can therefore understand defendant's failure to object before it was made; but in that circumstance defendant's attorney, immediately thereafter, should have objected, moved to strike, and to have asked that the jury be instructed to disregard the statement. Since he did none of those, and proceeded to pursue the subject further on cross-examination, we conclude that he must have thought he could gain some tactical advantage from that testimony. After the cross-examination was concluded and perhaps being dissatisfied therewith defendant's attorney then made the belated motion for a mistrial.

■ Notwithstanding defendant's failure to object and seek timely and appropriate relief the trial court had the power to sustain the motion for a mistrial if, in its discretion, it concluded that defendant had been prejudiced by the statement. That the court did not so conclude is demonstrated by excerpts from the memorandum it filed at the time of overruling the motion for new trial, as follows: "Officer Smith, not responsive to any question, volunteered the information that the defendant, when offered a phone, refused to call his attorney and refused to answer any further questions. For several reasons, this court does not feel that defendant is entitled to a new trial because of this unsolicited statement. First, defendant failed to make any objection to the statement following its utterance. * * * Second, the State did not pursue the subject beyond the initial remark of Officer Smith, and it stood as a singular and innocuous statement. Third, if the issue received any undue prominence it came on cross-examination when defense counsel covered the same territory by direct questions. Fourth * * * if any direct questions were put to the witness Smith about the defendant's refusal to answer questions regarding the crime, then it came on cross-examination. That being the case, who can now deny with any degree of certainty that some undisclosed trial tactic might have prompted such questions. Fifth, if the jury attached any significance to the remark, then the quality of that influence would seemingly dissolve when the defendant took the stand, gave a complete denial of his presence at the scene of the robbery, and provided alibi witnesses for his presence elsewhere."

The question as to whether the statement under consideration was so prejudicial as to require a discharge of the jury is largely within the discretion of the trial court and we will not interfere unless the record shows an abuse of that discretion. State v. Madden, Mo.Sup., 394 S.W.2d 317. We are convinced in this instance that the court did not abuse its discretion in refusing to declare a mistrial.

■ Finally, defendant requests that we review the foregoing contention under S.Ct. Rule 27.20(c), V.A.M.R., which provides that "[p]lain errors affecting substantial rights may be considered on motion for new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom." In that connection no point would be served by re-

peating the facts and circumstances heretofore set out. It is sufficient to say that we have carefully reviewed the transcript and have concluded that no manifest injustice or miscarriage of justice resulted from the statement in question, or from any other incident in the trial, and therefore, upon the entire record, we decline to grant any relief under Rule 27.20(c).

Judgment affirmed.

All concur.